UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOUIS E. MORALES,

        Plaintiff,

-vs-                                            Case No.  2:11-cv-1356-FtM-SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

        Defendant.
_____/

## ORDER

      This matter comes before the Court on Plaintiff's Brief Addressing Basis for Reversal of the Final Decision of the Commissioner (Doc. #18) filed on January 8, 2012.  The Government filed is Memorandum in Support of the Commissioner's Decision (Doc. #19) on February 9, 2012.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case and issues the following Order.

## FACTS

### *Procedural History*

      Plaintiff filed applications for a period of disability and disability insurance benefits, on September 9, 2008.  (Tr. 122-25).  Those applications were denied initially and on reconsideration.  (Tr. 70-74).  Subsequently, Plaintiff had a hearing before Administrative Law Judge (ALJ) Angela Miranda on August 12, 2010.  (Tr. 36-65).  At the hearing, Plaintiff appeared and testified and was represented by an attorney.  By decision dated January 27, 2011, the ALJ determined Plaintiff was

not disabled. (Tr. 10-25). The Appeals Council denied Plaintiff's request for review on June 9, 2011 (Tr. 1-5) and the Commissioner's final decision is now subject to judicial review pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed the instant Complaint on August 15, 2011. (Doc. #1).

*Plaintiff's History*

Plaintiff was 50-years old at the time of the ALJ's decision. (Tr. 42). Plaintiff has a high school education, having obtained a GED. (Tr. 46). He has past relevant work experience as a home security installer and a city park maintenance worker. (Tr. 42-43). Plaintiff alleges disability as of February 11, 2008, primarily due to lumbar and cervical pain. (Tr. 157).

*Medical Evidence*

On February 11, 2008, Mr. Morales was involved in a motor vehicle accident sustaining injuries to his left shoulder, neck and lower back. (Tr. 220). On February 14, 2008, Mr. Morales presented at the office of his primary care physician, Dr. Roberto Perez, indicating that he had been in a car accident, and was experiencing low back and shoulder pain. (Tr. 302). He was prescribed medication and x-rays were ordered. (Tr. 304). Dr. Perez also indicated that Mr. Morales was suffering from anxiety, and prescribed Xanax. (Tr. 303). Mr. Morales returned to Dr. Perez on February 20, 2008, with continued complaints of neck and shoulder pain. (Tr. 299). The next day, Mr. Morales was at the office of Dr. Perez again complaining of low back pain. (Tr. 296). Dr. Perez noted that he had referred Mr. Morales to a chiropractor. (Tr. 298).

Dr. Perez referred Mr. Morales to Dr. Phillip St. Louis. He was seen by this doctor on April 3, 2008. (Tr. 356). After the examination, Dr. St. Louis concluded that Mr. Morales had Lumbar Disc Disorder w/o Myelopathy. (Tr. 362). On this date, Dr. St. Louis noted that Mr. Morales was "cleared

to return to work (light duty), with restrictions related to heavy lifting, (greater than 25 pounds), or excessive bending." (Tr. 357).

On April 29, 2008, Mr. Morales sought treatment from Dr. C. Barton Galloway who noted "tenderness in the neck at the base, and the discomfort extends into the upper back and the trapezius muscles." (Tr. 221). Dr. Galloway also noted a limited range of motion and a tender lower back, bilaterally. (Id.). It was concluded that Mr. Morales had a cervical sprain/strain and lumbar sprain/strain, and that he should begin physical therapy. (Id.).

At the following visit with Dr. Galloway on May 6, 2008, the range of motion in the lower back and neck remained decreased. (Tr. 222). Also, Dr. Galloway noted that "[p]revious MRI had revealed two disc spurs of the cervical spine and one in the lumbar spine. (Id.). On June 6, 2008, tenderness in the paracervical and trapezius muscles of the neck, mainly on the right side, as well as lower back tenderness with a reduced range of motion was noted by Dr. Galloway. (Tr. 223). Thereafter, on June 27, 2008, Dr. Galloway reviewed the MRI of the lumbar spine from March 2008 and noted that it "showed multiple mild disc bulging and a small central herniation at L5-S1" that "did not cause any compression or distortion and no significant neural foraminal stenosis." (Tr. 224). However, the actual MRI report dated March 19, 2008, reveals that the "most significant abnormality is a small protruding disc herniation at L5-S1 which effaces the thecal sac and also touches and probably slightly displaces both passing nerve roots." (Tr. 255, 367).

On September 23, 2008, Mr. Morales went to his primary care physician, Dr. Roberto Perez, noting that he was in severe pain and that he was experiencing radicular pain in the left lower extremity. (Tr. 258). Dr. Perez indicated that Mr. Morales was suffering from a herniated lumbar disc, and continued his medication regimen. (Tr. 260).

On November 21, 2008, due to his L5-S1 disc herniation, Mr. Morales underwent a left L5-S1 laminoforaminotomy performed by Dr. Nizam Razack. (Tr. 403-08). Thereafter, Dr. Razack noted that Mr. Morales' surgical wound was clean, dry and intact, and that he was able to walk on his heels and toes. (Tr. 414). However, Mr. Morales noted that he was experiencing back pain and soreness so Dr. Razack refilled his pain medications, Lortab and Soma. (Id.).

The following month Mr. Morales presented at the emergency room of Florida Hospital with excruciating flank pain, and it was determined that he had a large kidney stone in the ureteropelvic junction requiring placement of a left ureteral stent. (Tr. 422). After Mr. Morales underwent extracorporeal shock lithotripsy for the kidney stone, the stent was removed on January 27, 2009. (Tr. 425, 427).

Mr. Morales returned to Dr. Perez on the same day the stent was removed with complaints of continued back pain, primarily in the lumbar spine. (Tr. 433). Dr. Perez continued to prescribe the pain medication, MS Contin, and Xanax for anxiety. (Tr. 435). The following month, on February 27, 2009, Mr. Morales informed Dr. Perez that he continued to have the back pain, and the narcotic medication only provided "some pain relief." (Tr. 570).

On April 27, 2009, Mr. Morales returned to Dr. Perez indicating that he had continued constant low back pain that he rated as "moderate in intensity." (Tr. 564). The doctor continued to diagnose Mr. Morales with Low Back Pain and Anxiety. (Tr. 566).

Then, on June 11, 2009, Dr. Perez referred Mr. Morales to Dr. Reddy for an evaluation of generalized abdominal pain. (Tr. 468). Dr. Reddy concluded that Mr. Morales had a Hiatal Hernia, Gastritis and Ulcers. (Tr. 472, 515). On June 29, 2009, lab testing revealed Mr. Morales was reactive with the Hepatitis C antibody. (Transcript 464, 504). A biopsy of the liver performed on August 19,

2009, revealed Mild Steatohepatitis, Grade 1 and Stage 2. (Tr. 494). On July 28, 2009, Dr. Perez noted low back pain, mostly in the lumbar spine. (Tr. 548). He was diagnosed with Low Back Pain, and his MS Contin was refilled. (Tr. 550).

On November 12, 2009, Mr. Morales presented at the office of Dr. Perez complaining of anxiety, and it was noted that his "symptom complex includes apprehension." (Tr. 537). He was diagnosed with Anxiety and given samples of Seroquel. (Tr. 539).

A few weeks later, on December 1, 2009, Mr. Morales returned to Dr. Razack, the surgeon, who repeated an MRI revealing a disc bulge at L5-S1, but no "significant herniation causing mass effect on the exiting S1 nerve roots." (Tr. 600). Thus, Dr. Razack opined that Mr. Morales should continue with pain medication. (Id.). However, once again, the MRI report showed there was a "chronic appearing annular fissure which contacts both S1 nerve roots." (Tr. 601). The radiologist concluded that "[t]his, along with degenerative changes of the posterior elements, producing borderline stenosis plus bilateral subarticular recess stenosis with the AP diameter of the thecal sac measuring 9mm." (Id.).

On March 25, 2010, Dr. Perez opined that Mr. Morales was "totally disabled." (Tr. 606). On April 14 2010, Mr. Morales informed Dr. Perez that he was experiencing anxiety with apprehension and depression. (Tr. 615). Mr. Morales returned to Dr. Perez with complaints of back pain again on May 21, 2010. (Tr. 607). On this date, Dr. Perez also opined that Mr. Morales was suffering from Bipolar Disorder, and prescribed Lithium Barbonate. (Tr. 609). Also, Dr. Perez again opined that Mr. Morales was permanently incapable of any kind of work. (Tr. 640).

On June 7, 2010, Mr. Morales was seen by psychiatrist, Dr. Gerald Balsam. (Tr. 659-61). Dr. Balsam also opined that Mr. Morales was suffering from Bipolar Disorder with a global assessment

of functioning of 502. (Tr. 661). The following month Dr. Balsam completed a mental assessment opining that Mr. Morales had chronic, severe anxiety with daily panic attacks. (Tr. 665). Additionally, Dr. Balsam noted that Mr. Morales had poor stress coping. (Id.). Dr. Balsam opined that Mr. Morales was "not able to perform designated task or function on a regular, reliable, and sustained schedule" the following work-related activities: the ability to remember locations and work-like procedures; the ability to complete a normal workday and workweek without interruptions from psychological-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instruction and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take appropriate precautions; and the ability to set realistic goals or make plans independently. (Tr. 664-65).

*Administrative Law Judge's Decision*

On January 27, 2011, after reviewing all of the evidence and testimony, ALJ Angela Miranda issued a "Notice of Decision - Unfavorable." (Tr. 13-21). The ALJ found that Plaintiff had a severe combination of impairments: cervical spine dysfunction classified as mild spondylitic disease; lumbar spine with moderate generative changes and mild stenosis; status post microdiscectomy; liver dysfunction including Hepatitis C and hepatic cysts; hypertension; gastrointestinal dysfunction including hiatal hernia, gastritis, and a stomach ulcer. (Tr. 15, Finding No. 2). Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. (Tr. 16). The ALJ also determined that Plaintiff had unlimited capacity to push and pull up to the weight capacity for lifting

and carrying, stand and walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. (Tr. 16).

The ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 20, Finding No. 6). The ALJ subsequently considered Plaintiff's age, education, work experience, and residual functional capacity, and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a toll booth cashier, counter and rental clerk, hand packer, and assembler. (Tr. 20-21). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 21, Finding No. 11).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry described in the regulations (20 C.F.R. §§ 404.1520(a), 404.920(a)). The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

> Step 1. Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
>
> Step 2. Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.
>
> Step 3. Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.

Step 4. Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

**DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed two errors for which this case should be revered and remanded for further development or for payment.  Specifically, Plaintiff alleges: (1) the ALJ erred in failing to consider the evidence after the date last insured when the Plaintiff had filed for Supplemental Security Income (SSI), as well as Disability Insurance Benefits (DIB), but the ALJ did not consider the SSI application; and (2) the ALJ erred in failing to adequately consider the Plaintiff's mental condition after failing to accurately document the Plaintiff's date last insured. The Court will consider each of these issues below.

*1. Whether the ALJ erred in failing to consider the evidence after the date last insured when the Plaintiff had filed for SSI, as well as disability insurance benefits, but the ALJ did not consider the SSI application*

Plaintiff alleges that in the instant case, the Plaintiff applied for both SSI and DIB.  (Tr. 119-25).  But, the ALJ merely indicated that Mr. Morales applied only for DIB. (Tr. 13). The ALJ also noted that the "claimant must establish disability on or before" December 31, 2009, the date last insured. (Id.). However, since the claimant also applied for Supplemental Security Income, Plaintiff

argues that the ALJ should have considered the evidence after the date last insured, but she did not, which was a clear error.

The Defendants responds that Plaintiff concurrently filed with his DIB application, an application for SSI. While the certified transcript does not contain the disposition of that application, Social Security records indicate that the Agency denied Plaintiff's SSI claim on October 6, 2008, due to income ineligibility. (Tr. 2). Accordingly, the Court agrees that the only issue before the ALJ that was addressed at the hearing and in the ALJ's decision surrounds Plaintiff's application for DIB, and not SSI. (Tr. 2, 10-25, 36). Under the Social Security Act, a court may only review a final decision of the Commissioner made after a hearing. See 42 U.S.C. § 405(g). Here, the final decision of the Commissioner at issue does not include Plaintiff's SSI denial. Thus, Plaintiff's "Issue Number 1" that the ALJ failed to consider evidence pertaining to his SSI application is not properly before his Court. See Califano v. Sanders, 430 U.S. 99 (1977).

*2. Whether the ALJ erred in failing to adequately consider the Plaintiff's mental condition after failing to accurately document the Plaintiff's date last insured*

Plaintiff argues that the ALJ made two separate determinations regarding the date last insured of the Plaintiff in her decision. To begin, she indicated that the "claimant has acquired sufficient quarters of coverage to remain insured through **December 31, 2009**." (Tr. 13). Then, later in the decision when addressing the Plaintiff's mental condition, the ALJ indicated that the "claimant's first complaint about any mental limitation was after his date last insured of **June 30, 2009**." (Tr. 16). Plaintiff argues that although it is not accurate, he actually had issues with anxiety prior to June 30, 2009, this is not the correct date last insured, and the ALJ should have accurately considered the mental evidence in regards to the Disability Insurance Benefits claim up until the correct date last insured - December 31, 2009.

The Court notes that the ALJ erroneously misstated Plaintiff's date last insured at two points in her decision on Transcript pg. 16, 18. Here, she referred to the date last insured as June 30, 2009, when it was in fact December 31, 2009. The Court finds that this was harmless error as the ALJ applied the correct legal standard despite her misstatement. See Pichette v. Barnhart, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1983) (misstatements harmless where ALJ applied correct legal standard despite the first misstatement, and the second misstatement was irrelevant). Otherwise, the ALJ noted throughout her opinion that Plaintiff's date last insured was December 31, 2009. (Tr. 13, 15, 21). Thus, the ALJ's error was at most harmless and did not prejudice the Plaintiff's case. See Shinseki v. Sanders, 556 U.S. 396, 398, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (noting there must be a showing of prejudice before it is found that a claimant's right to due process has been violated to such a degree as to require remand).

Moreover, even if the ALJ limited her assessment of Plaintiff's mental impairment to June 30, 2009, instead of December 31, 2009, an assessment of Plaintiff's mental records through December 31, 2009, would not have changed the ALJ's decision. There is no evidence in support of any mental limitations even after June 30, 2009, through the correct date last insured of December 31, 2009. As correctly noted by the ALJ, Plaintiff did not seek treatment from a mental health professional until June 2010, over six months after his date last insured. (Tr. 15-16, 658-62).

Further, the ALJ found based on substantial evidence in the record that the Plaintiff did not suffer from a mental impairment that would preclude him from working. Importantly, the ALJ noted with regard to the Plaintiff's mental capacity to sustain work that he had only mild limitations:

> State agency psychological consultants, Theodore Weber M.Div., Psy.D., and Edmund Bartlett, PhD, reviewed the claimant's medical records. They determined that the claimant has mild limitations with regard to performing his activities of daily living and no difficulties with his social functioning and ability to maintain concentration persistence and pace, Exhibits 5F, 10F. I give these opinions significant weight and find that the evidence in the record supports it at the time it was offered and consistent with evidence received through the claimant's date of last insurance.

(Tr.19). The ALJ did consider Plaintiff's mental limitations and there is no further evidence presented by the Plaintiff that the ALJ did not consider Plaintiff's mental limitations through the correct date last insured, December 31, 2009:

> The claimant also has anxiety, insomnia, isolated episodes of bronchitis or phayrngitis, hypertriglyceridemia and impaired fasting glucose, Exhibit 3F, 8-13. In addition, he was assessed with bipolar[1] after his date last insured,[2] but with no significant symptoms present prior to this date. Nonetheless, these conditions do not cause significant limitations to the claimant's ability to perform her *[sic]* activities of daily living and I find them nonsevere. (Tr. 15).

Thus, the Court finds that the ALJ's determination that Plaintiff did not have a mental impairment which precluded him from working was supported by substantial evidence. Since the Court finds that the ALJ did consider the mental evidence up until December 31, 2009, the Commissioner did not commit error in this regard.

Accordingly, it is now

**ORDERED:**

---

[1] Notably, Plaintiff was diagnosed by Dr. Perez with bipolar on May 21, 2010, after the date last insured. (Tr. 609).
[2] This paragraph is just below the ALJ's notation that the date last insured was December 31, 2009, which is the correct date last insured.

The Decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   13th   day of April, 2012.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record